The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. First case today is Kyle Watkins versus Sean Medeiros, appeal number 20-1108 and appeal number 20-1194. Attorney Pumphrey, please introduce yourself for the record and proceed with your argument. Good morning, I'm Janet Pumphrey for the appellant Kyle Watkins. The Commonwealth's many, many Brady violations were a purposeful effort to deny the petitioner the right to cross-examine the Commonwealth's only identification witness, Vern Rudolph. All of the non-disclosures related directly to the credibility of this one witness and to the central issues of bias. Taken cumulatively, the Commonwealth's deliberate disregard of the material discovery and ignoring court orders made a mockery of the principles of Brady. First, the finger shot report. The crucial issue is not whether the police considered charging Rudolph, it's that Rudolph had a perceived or real relationship with the Commonwealth where he would do or say anything, including lying about Kyle Watkins' own cases. The attempt to curry favor with the Commonwealth was invaluable bias evidence, which the defense never received and the jury never heard. The state's unreasonable finding was that they were not aware that Rudolph was a witness. In the police report, the first thing Rudolph said was that he was a witness against Kyle Watkins. At the Rule 30 hearing, the prosecutor even testified that he knew about the incident and that Rudolph had not been prosecuted. Just that knowledge explains the... Ms. Pumphrey, the SJC goes on to make two other findings that there was no evidence of any attempted deal out of this, and I've forgotten the other one, but in support of their no prejudice finding, they didn't simply rely on the first ground. So, but the first ground was mistaken. The new trial judge motion in Superior Court got it wrong. The SJC then got it wrong. How does this affect our standard of review, if at all? Well, I think it's important to note that there was no attempt here of currying favor, and not necessarily the receipt of any favor, and that's exactly what happened here. The district court, at the trial, the petitioner didn't know that Rudolph had shot his finger. He didn't have these, he didn't have, the petitioner didn't know this because he didn't have this because it was withheld. Before you get into the facts, could you just address the standard of review question Judge Lentz just asked you? Does the fact that the state courts got the record wrong, mm-hmm, affect our standard of review on federal habeas with respect to the prejudice question? If so, how? I would say that it does, you know, it does, well, it does affect the standard of review, and I think it is more favorable because the district court got it so very wrong, or the state court got it so very, very wrong. Okay, let me go back. There were three different no prejudice rulings by the SJC, so one of them was an error. Okay, so do you have any case law about, first, assume there was only one error, and then assume there's only one out of three. Is there any case law out there about how that affects our standard of review? I would have to look that up, Your Honor, and I will file a supplemental brief, if I may, a supplemental letter. You just do a 28-J letter? 28-J letter, yes. The prejudice to the petitioner that he was denied the opportunity to present Rudolph to the jury as a witness who repeatedly... Can you just, it'll be helpful to me if we go one by one. Go one by one. With respect to the one where you contend that the facts were described incorrectly, not prejudice ruling... That's the first one. Okay, just walk me through what they got wrong. Mm-hmm. I assume the district court, you think, made the same error because it embraced the same misunderstanding of the record, and then walk me through how that error bears on the prejudice finding that was made with respect to that Grady violation. Does that question make sense? It does. Okay. The state court's ruling was an unreasonable finding of fact that the officers were not aware that Rudolph was a witness. That's, in the police report itself, which is what they had before them, the first thing that Rudolph said was that he was a witness against Kyle Watkins. Okay. It's a clear error. Now, with respect to that, that goes to the Brady issue regarding the finger shot? Yes, the finger shot. Okay. Now, with respect to the prejudice finding that was made about the finger shot, how does the factual error about whether he was a witness infect their prejudice ruling about the finger shot in a way that should affect our standard of review? Do you see what I'm saying? I do, and I think the prejudice is the fact that he was that Watkins didn't have this information, and he could have used it. No, no, that's not what I'm saying. The state courts and the district court made a conclusion that the deprivation of your client getting this information, in effect, the withholding that triggers the Brady problem, was that partly in evaluating that they erred by addressing it in part by saying, well, the police didn't know he was a witness. Mm-hmm. They then go on to say there was no prejudice from that Brady violation, and that's in part because they say there was no intent to charge him. Mm-hmm. How does the factual error that they made about whether he was a witness, whether the police knew he was a witness, infect or undermine or call into question the prejudice ruling that the withholding of the information about the finger shot was not prejudicial because there was no intent to charge? Is there a relationship between that error and the prejudice finding, or is there no relationship, or you just think the prejudice finding is wrong? The prejudice finding is wrong. The district court... But is there a relationship between the fact that the police knew he was a witness and their prejudice finding? Because that will affect our standard of review of the prejudice finding. Well, I would like the opportunity to send a letter, a 28-J letter, on the cases. Ms. Humphrey, we do get your point that whether or not they made that fact error, you are still saying they were wrong to have no prejudice. Exactly. Okay, okay. The other Brady issues that you have to argue with. Yes, there are several more. The dangerousness hearing. I think the dangerousness hearing may be the best example of Rudolph's expected rewards by the Commonwealth in what he said at the dangerousness hearing. The respondents argued that the SJC reasonably found that the petitioner didn't suffer any prejudice, but Rudolph's actual receipt of favorable treatment is not necessary for the finding of materiality. It was, again, it was his attempt to obtain a deal, and he was just, it was blatant. Even at the motion for a new trial hearing, Rudolph explicitly testified that his dangerousness hearing, I was seeking not to be held in exchange for his testimony, and there's absolutely no reason for Rudolph to mention Kyle Watkins at his own dangerousness hearing, other than to curry favor with the Commonwealth to get favorable treatment for himself. The impeachment value of showing that Rudolph was a liar and habitually claimed, habitually blamed Watkins for crimes, such as this murder, was enormous. Ms. Pumphrey, you know that the district court agreed, at least this is my understanding of the record, agreed with the state court that essentially these Brady concerns did not create the requisite degree of prejudice, because they were just cumulative in light of the fact that your client did know that Rudolph had some sort of deal, and that was communicated to the jury. So how do we think about the fact that these are, in a and this would have disclosed that. These are ways of augmenting the degree to which he was trying to curry favor beyond the information we did have about the deal. So how do we think about that question, and then how do we think about the fact that we do owe deference to a state court's assessment of prejudice in general, and it's making this assessment that, well, this is just cumulative, it's too much at the margins, it's not enough to take it over the way, and why isn't that a reasonable assessment? What's your response to that? Well, I think it's because it's so cumulative that makes it so much worse. Each of these taken on their own may not, you know... Four minutes remaining. Okay, thank you. I'm going to go on, if I may, to the crime scene diagram. Early on, Rudolph was deposed, and so the Commonwealth was committed to his deposition testimony that the shooter was near the corner of Mill and Cedar. Rudolph testified he couldn't see down the street, it was rainy, it was dark, and the Commonwealth withheld all the crime scene evidence. There were two crime scene diagrams created, and what the crime scene diagram shows is exactly the location of where the shooter was standing, because it shows the location of the shell casings. By depriving the petitioner, he was denied the opportunity to question the Sergeant Britt on who created the diagram. He was denied the opportunity to have a chalk to say exactly where the shooting took place, and if I could go on to the police pre-recorded, pre-interview notes. Non-disclosure of the interview notes also deprived the petitioner of his opportunity to impeach Rudolph's testimony with respect to his chain story, with what time he left the Elks Club, to show that Rudolph never once mentioned Kyle Watkins in two hours until the police mentioned Watkins, and to, importantly, investigate very credible third-party evidence. Rudolph, just four days after the shooting, Rudolph was interviewed by the police, and Trooper Kilnatt's notes say... Could you address the other evidence that the state court invoked that suggested, in support of its no prejudice ruling, that there was, I guess it's three other persons, none of whom named your client as the shooter, but all of whom identified a person with similar clothing, as similar height, similar race, similar clothing, as being the shooter. How does that fit in? The three other people, two of them were sisters, and they actually got the closest view of the shooter, and one of the sisters knew Kyle Watkins and didn't name him. I mean, they drove right there. The third person, disinterested person, testified that he placed his car in the intersection, looked to his left, and saw the shooting, and Rudolph testified that he placed his car in the intersection and turned the corner, and that's when he saw the shooting, which puts the two vehicles in exactly the same place at exactly the same time. So I don't give those witnesses much, or at least they all... Ms. Pumphrey, my sense of this is you argued all of that to the jury, and they rejected it. So your argument comes down to, even though this was a theme of the defense, I could have done this more powerfully had these Brady violations not occurred. Mm-hmm, absolutely. And I guess the theme is also that the countervailing evidence of the other ideas outside of Rudolph, you're saying, is maybe strong enough for sufficiency purposes, but it's not so strong as to preclude the finding of prejudice. Absolutely, especially, well, with all three witnesses, it's just not, it's goes back to the standard of review, because an argument that I could perhaps have been more powerful in my defense had I had this information does not make a state court decision to the contrary unreasonable. Do you have any case that draws the equivalence you want us to draw? I don't at my fingertips, Your Honor, but as I said, I will file a 28-J letter on the standard of review, because... I just want to emphasize the point Judge Lynch is asking about, because it relates to this point I was trying to ask you about, about the factual error. Yeah. Because if that factual error infected the prejudice finding, then the Yeah. Okay. Does that help you? Did you have a question? Yes, two short questions. Counsel, you have on behalf of your client, the burden of rebutting the presumption of correctness by clear and convincing evidence. I know the government raised that in its response, but you don't address that point in your brief or your reply brief. You understand that your arguments would comply with that standard of clear and convincing evidence under the statute? Well, the one thing that I think is that clear and convincing evidence goes back to the goes back to the very first, the finger shot report. Because it's a clear, it's a clear, it's a clear error. I mean, it's a clear and convincing evidence. You understand that your Yeah. Yeah. Oh, I understand. I understand. But going back, it's really, it's really the, the finger shot report that is a, you know, proven by clear and convincing evidence here. Should I go on to the last, the last? We're out of time. One minute. Thank you. Yes, you did. Thank you, Attorney Pumphrey. At this time, if you could mute your camera and your audio, and Attorney Reardon, if you could unmute and introduce yourself on the record to begin. Good morning, Your Honors. Assistant Attorney General Suzanne Reardon on behalf of the respondent in this case. To start with the report of the finger shot, Your Honors, questions about the standard of review. I, you know, acknowledge the fact that the SJC and the the motion for new trial judge got that fact wrong that the police didn't know about his cooperation in this case. But the finding of no prejudice was clearly based on other factors, including the fact that there was no evidence that Rudolph got or attempted to get favor in this case or received any favorable treatment due to the fact that he was a witness in this case. So in light of that, and the fact that this, this error doesn't really factor into their in terms of the... Don't we have to run it the other way, which is that if they had known and understood the record to show that the police knew he was a witness, would they have been justified in being focused solely on the formal question of whether the charge was intended to be that if Rudolph was a witness, there was more reason to be concerned that they had leverage over him that they would be using in the course of this particular trial and his testimony. And that that's the argument from your opponent. And we don't know what the SJC would have thought about that argument because it read the record in a way that never led it to have to confront it. Agreed, Your Honor, that they didn't consider that or they considered that fact improperly. But I think the conclusion would remain the same, that the report, even though he mentioned that he was cooperating in this case, was a witness in this case, there wasn't any information that the the police took that into consideration in not charging him as a felon in possession of a firearm in that case. That's true, but I think it just elides the argument that's being made about how this was prejudicial, which is that it's not that there was a formal charge made. It was only the deal that was made. But if a juror knew that these police officers did not charge a person, they knew was going to be their only cooperating witness for a crime they could have charged him with, that that strengthens the inference the jury could draw that this was some sort of additional deal between the two. That argument was never considered by the SJC. And so while we might defer to the SJC if it rejected it as being a reasonable thing to say that wouldn't have made a difference, when the SJC never confronts it, we have to just review that argument for prejudice de novo because it's never been addressed by the SJC. What's wrong with that way of looking at it? I would argue that even if you look at it de novo, your honor, that the conclusion that the SJC made that this was not a Brady violation is still a reasonable application of Brady. The jury did find out that Rudolph had an agreement with the Commonwealth in exchange for his testimony that was pressed and he was cross-examined on it at trial. So any further sort of inference that maybe he had gotten further favorable treatment is cumulative and therefore the conclusion that the SJC came to doesn't change the analysis that this is not an unreasonable application of Brady. But you see, we wouldn't be then evaluating it for just whether it was a reasonable application for Brady. For a de novo review, we just have to ourselves decide whether there's a Brady violation, right? Yes, correct. And the prejudice part of it. And you just said he did in fact get a deal not out of the finger shooting, but he got a deal and all of that evidence was presented to the jury. So even if hypothetically he might have gotten a deal earlier and we don't know one way or the other, it simply would have been perhaps the same deal or a slightly more favorable deal. Correct, your honor. So the jury was aware of this specific deal which actually really did give him favorable treatment and any further inference that maybe he had gotten further favorable treatment would not have prejudiced the jury. Moving on to the dangerousness hearing, I think what the SJC really focused on was did he receive favorable treatment? Again, similar to what we've just been talking about, he may have asked and may have told the court, look, I have this other case I'm testifying in, shouldn't I get favorable treatment? The fact that he didn't, he was held on dangerousness, really takes away the prejudicial effect that this would have had on his testimony. Can I ask you about that? Because I guess I'm just trying to think about it from the argument that you're trying to make what you could have shown to the jury and whether that would have affected the jury's assessment of the credibility of this cooperatives. Isn't it of some power that what was withheld from the defense counsel to be able to present to the jury was that in that dangerous hearing he was specifically talking about whether he was going to testify negatively against the defendant in the case? That seems like a fairly powerful point to present to a jury, which is just theoretical whether he himself linked his testimony to getting a deal. When he's there himself saying in the hearing, why should I testify against this guy if you're not going to help me out? That seems like a fairly powerful fact for a juror to hear. I guess it depends on how you interpret his statement. He was, I don't know if he necessarily implied that he was going to not testify. He was just saying, look, I have this other, I have to testify in this trial, don't you want to take that into consideration? Did he say, should I just be all bushy-tailed and go out there and testify if you're not going to do it? That's how I read it. Yeah, I mean, I guess even if you look at it in terms of maybe he was in some ways threatening that he wasn't going to come and testify, the jury still had his agreement with the Commonwealth, which was good impeachment evidence. He had to testify truthfully in order to get released from the sentence he was serving. Again, we can say it's cumulative how much would have that had affected the petitioner's case and the jury's verdict. Again, a reasonable application of the Brady prejudice standard in this case. Ms. Reardon, I assume the Attorney General's Office, well, who is responsible among counsel here for the fact that the trial judge, the motion for new trial judge made an error, somebody didn't bother to look at the record, and then what happens at the SJC? Does your office take over at that point and defend in the SJC? I'm sorry, Your Honor, I guess I don't understand the question. Courts respond to arguments that are made. It's clear that this, to me at least, that this error on the part of the motion for new trial judge's part about what the police report said should have been called to the attention of the SJC. Okay, counsel, some counsel didn't bother to look at the record in the case. Okay, so my question is, was it your office that defended this before the SJC and made a misleading argument to the SJC? Your Honor, it was the DA's office who defended this and I can't speak to how they defended that at the argument. I don't know how that was missed. Five minutes remaining, five minutes. I don't know how that was missed by both the motion judge and the SJC. I agree that that's an error that should have been recognized. Judge Helpe, do you have anything? Yeah, following up on Judge Lynch's question, because if the error is induced, and it may not be the Attorney General's office, but it's the state, if the error for the SJC is induced by the Commonwealth, shouldn't there be a remedy for that? So that's, it is concerning. I've rarely seen such an issue. It's the government also prompting that. So that's my question. I guess I would go back to my argument that how much did this affect the prejudice analysis made by the SJC? We recognize that it was an error, but did it really affect the prejudice analysis and whether this would have affected the verdict ultimately? Again, my argument is even under De Novo review that it would not, since the jury was well aware of the agreement that the petitioner had with the government. Let me also ask you the follow-up. I understand that under Massachusetts law, the equivalent of Brady, it's more favorable to a petitioner, to a defendant. So does that in any way support that this conviction should be affirmed under the Habeas review? Yes, thank you, Your Honor. It is true that the prejudice analysis under state law is more favorable. So the argument would be that the petitioner actually got a more favorable review under the state standard and therefore it should be upheld under the federal standard, which isn't as favorable. But Justice, Duffley flatly refers to Brady and the Brady obligations. So the state, the way I read the SJC decision, they were dealing with both federal and state claims. Correct, Your Honor. But the SJC did mention the prejudice standard under the state law, which is arguably more favorable as well. Well, I'm trying to understand the point. What's more favorable about it? So under the state standard, it depends on whether the defendant has specifically requested the material that they claim has not been turned over. And if there has been a specific request, it's a more favorable standard than if there had just been a general request. Is that more favorable standard more favorable than the Brady prejudice standard itself? And if so, how? Yes. So under, I don't have my finger on it right now, but under if the court found that there was a specific request for the information, it is a little bit more favorable. It is in the opinion. I can't put my finger on it right now, but it is in the SJC opinion. So arguably that would have given the petitioner a bit of an edge in terms of the prejudice standard. Counsel, let me just ask you one quicker question. As I mentioned in my questions to your opposing counsel, the burden for 2254, it's clear and convincing evidence, which is a fairly, it's beyond the ponderance of the evidence. But going back to Judge Lynch's question and my follow-up, isn't the fact that the Supreme Court was induced to error by the state, there's error out there for sure. Isn't that error per se, doesn't that meet the clear and convincing standard that would warrant reversal or remand? Or vacation, I mean, of the judgment. I would argue, Your Honor, that even if we found that the SJC's decision met that clear and convincing standard, we still have to look at the habeas standard, whether it was a reasonable application or if we do de novo review, whether the Brady prejudice standard was met. We don't look just to whether the facts were clearly improper under that standard. We have to look also at the Brady standard. With Judge Barron's permission, I'm going to suggest that the Commonwealth brief the same issues in a 28J letter to us that we asked habeas counsel to address. Yeah, you know what, I think let's do this. We'll send an order out asking you how to address these issues right after today's proceedings end so we can make sure we get it the way we want. Okay, Your Honor, that sounds fine. Thanks. And unless there are any further questions, I will rest my brief on the remaining issues. Thank you. Thank you. Thank you, Attorney Reardon. At this time, if you could mute your audio and video. And Attorney Pumphrey, you have one minute of rebuttal. Please reintroduce yourself on the record to begin. Janet Pumphrey for the appellant, Kyle Watkins. Thank you also for the opportunity to file the 28J letter and I do appreciate the opportunity to brief the standard of review issue. But I'd like to go back to Judge Lynch's point about the deal that Rudolph did get and she said it was fully before the jury. Well, it really wasn't because the parameters of the deal were never disclosed. All they got was a letter two nights before the trial was to start that it was going to be a trial. I'm not sure if you have any objection to that question, are you? I am. I am. Because defense counsel didn't have... What was not disclosed under Brady with respect to that deal? Well, the parameters of the deal, the point of the prosecutor... Is there anything in the with respect to what was disclosed about the deal that makes it a Brady violation? The only thing that was disclosed was the letter and so the only thing that defense counsel could argue was he asked Rudolph one question and one question only. What is in the record about what was not disclosed that should have been pertaining to the deal? Well, what was not disclosed was that basically in the words of defense counsel, the prosecutor turned a school zone into not a school zone. If Rudolph had not been in the school zone, he wouldn't have pled guilty and if Rudolph hadn't been in a school zone and the Commonwealth learned that Rudolph wasn't in a school zone, the Commonwealth would have moved to change his trial hearing. The city planner who actually made the maps testified that he was in a school zone. The maps themselves indicate that he was in three schools. That's time. And every piece of evidence indicates that Rudolph was in a school zone and it should have been disclosed. Thank you. Thank you. That concludes argument in this case. Attorney Pumphrey and Attorney Reardon, you should disconnect from the hearing at this time.